Philip Green & Son, Inc., Appellant, *v.* Kimwyd, Inc.

Argued January 10, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Maurice M. Green,* with him *H. Joseph Harrison,* for appellant.

*Roland Fleer,* with him *Waters, Fleer, Cooper & Gallagher,* for appellee.

OPINION BY MR. JUSTICE COHEN, March 19, 1963:

Plaintiff-appellant issued a writ of attachment execution against garnishee-appellee claiming that the latter held funds belonging to defendant-debtor. Appellee denied that he was indebted to defendant and the matter came to trial without a jury.

The findings of fact below, which are amply supported by the record, disclose that defendant executed and delivered to appellee its bond and mortgage in the amount of $25,800. The mortgage, which was duly recorded, was a construction mortgage on a private residence to be built by the defendant. It was orally agreed that the mortgage should secure a $21,000 loan, a $2,000 service charge, and $2,700 of prior indebtedness. Appellee was obligated to advance the $21,000 only "as warranted by the progress of the construction."[1]

Between December 1959 and February 1960, appellee paid $16,886.68 either directly to defendant or to its subcontractors and materialmen. In January 1960, appellant entered judgment against defendant for $6,930 and served an attachment execution upon appellee. As a result of this attachment, all work ceased on the half-completed residence.[2]

Appellee thereupon entered judgment on the $25,800 bond and issued execution upon the premises. The premises were purchased by appellee at the sheriff's sale for $6,000 but he did not obtain a deficiency judgment for the balance owed to him by the defendant.

In this garnishment proceeding, appellant seeks to transform appellee, an unsatisfied creditor of the defendant, into a debtor of the defendant. The metamorphosis is accomplished by the following two-step reasoning process: (1) because of his failure to obtain a deficiency judgment under the Deficiency Judgment Act, appellee is presumed to have received from the execution sale the full amount of his judgment ($25,-

---

[1] This factual determination answers appellant's alternative contention that appellee became indebted to defendant in the amount of $21,000 immediately upon execution of the mortgage.

[2] The court below correctly determined that the expenditures of $16,886.68 fulfilled appellee's obligation to pay for work performed in constructing the half-completed residence.

800) and not merely the actual amount of the sale ($6,000); (2) appellant, a junior creditor, can collaterally attack appellee's $25,800 judgment in order to show that a lesser amount was owed by defendant-debtor. Appellant concludes that the difference between $25,800 and the amount actually owed[3] is a debt belonging to defendant and hence subject to this garnishment proceeding. The court below correctly entered judgment for appellee-garnishee.

Appellant's first premise misconceives the nature and purpose of the Deficiency Judgment Act.[4] That Act was passed during the depression to deal with the inequity that an execution creditor could purchase real estate for a nominal amount at a forced sale and still retain the full amount of his judgment against the debtor. The solution to this problem was to reduce the judgment by the fair market value of the property instead of the actual sale price. See *Union Trust Company v. Tutino*, 353 Pa. 145, 44 A. 2d 556 (1945). Thus before an execution creditor can proceed against other property of the debtor, he must petition the court to determine the fair market value of the property he has purchased. If, as here, no petition is filed, the debtor is released from the liability.[5]

However, the Act affords no affirmative relief to the debtor. Where the debtor or those standing in his shoes asserts that an excess resulted from the sale, they are bound, just as before the passage of the Deficiency Judgment Act, by the actual sale price. See *Ochiuto v. Prudential Insurance Company of America*, 356 Pa. 382, 52 A. 2d 228 (1947). Appellant, therefore, cannot maintain that appellee received more than $6,000

---

[3] Appellant claims that appellee is only entitled to the $16,-886.68 which he expended, and that the balance of $8,913.32 is owed to defendant.

[4] Act of July 16, 1941, P. L. 400, 12 P.S. §2621.1 et seq.

[5] Act of July 16, 1941, P. L. 400, §7, 12 P.S. §2621.7.

from the execution sale and it is conceded that more than that amount was due him.

Moreover, even if appellant were permitted to maintain that appellee received the full amount of his judgment from the sale, our decision in *Slater Supply Company v. Universal Builders' Supply Company,* 397 Pa. 533, 155 A. 2d 617 (1959) would prevent him from collaterally attacking the judgment in order to show that a lesser amount was owed. In that case, we held that, in the absence of an allegation of satisfaction or collusion, a junior lienholder could not assert that a prior judgment note for $9,500 was in reality a construction loan on which only $6,000 had been advanced.

For the above reasons, the court below correctly determined that there was no property subject to attachment.

Appellant has also attempted to question the awarding of garnishee's counsel fees in this case. Since this appeal was instituted before the court below had an opportunity to determine the amount of the fees, that question is not ripe for decision.

We would, however, make one observation in this regard. Where it is determined that there is no property subject to attachment, the Act of June 11, 1885[6] permits a garnishee's counsel fee of ten dollars. As a supplement to this Act,[7] the Act of April 29, 1891[8] allows the imposition of fees in excess of ten dollars. A literal reading of the Act of 1891, however, would seem to limit its application to instances where final disposition or discontinuance occurs "prior to answers filed."[9]

---

[6] P. L. 107, §1, 12 P.S. §3000.

[7] Actually both Acts are supplements to the Act of April 22, 1863, P. L. 527, §1, 12 P.S. §2999 which deals with counsel fees where there is property subject to attachment.

[8] P. L. 35, §1, 12 P.S. §3001.

[9] "Where, in any attachment, . . . an appearance by attorney . . . shall have been entered by any garnishee or garnishees there-

Therefore, if fees in excess of ten dollars are sought, we suggest that counsel demonstrate exactly how the Act of 1891 applies to the facts of this particular case.

Judgment affirmed.

Mr. Justice ROBERTS dissents.

———

in each said garnishee so appearing shall be entitled to recover from the plaintiff, in addition to the costs already allowed by law upon any discontinuance or other final disposition thereof, *prior to answers filed,* a counsel fee of at least ten dollars, to be taxed as part of the costs. . . ." (Emphasis supplied).